UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| HAMMILL MANUFACTURING CO., ) | |
| ) | Case No. 3:25-CV-00462-JJH |
| Plaintiff, ) | |
| ) | Hon. Judge Jeffrey J. Helmick |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA; and ) | |
| UNITED STATES INTERNAL ) | |
| REVENUE SERVICE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANT UNITED STATES OF AMERICA'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTS TWO, THREE, AND FOUR OF PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff Hammill Manufacturing Co. ("Plaintiff") inappropriately seeks sweeping injunctive relief that will not impact Plaintiff, either positively or negatively. Plaintiff does not have any claims for Employee Retention Credits ("ERCs") pending before the IRS, nor does it allege that it ever will have future ERC claims before the IRS. Plaintiff's only pending ERCs are before this Court, and its claim for refund will provide all the redress to which Plaintiff is entitled. The ERC had a short life span—covering less than two years of employment tax periods—and the applicable statutes no longer permit ERCs to be claimed after the 2021 third quarter employment tax period. Nevertheless, Plaintiff asks this Court to enjoin the United States Internal Revenue Service nationwide from enforcing or otherwise relying upon IRS Notice 2021-20, which consists of guidance materials in reviewing ERC claims, and to vacate IRS Notice 2021-20.

1

The United States brings this motion pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Because Plaintiff lacks standing to seek an injunction that can never benefit it, and because a nationwide injunction would be improper here, the Court should dismiss Counts Two, Three, and Four, all of which seek identical injunctive relief and vacatur regarding IRS Notice 2021-20.

## I. BACKGROUND

### A. Employee Retention Credits

In response to the Covid-19 pandemic, Congress established the Employee Retention Credit, which provided a tax credit to eligible employers for 2020 and the first three quarters of 2021.[1] In March 2020, Congress enacted Section 2301 of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which established the ERC for the calendar quarters of 2020. Pub. L. No. 116-136, 134 Stat. 281 (2020). Congress later extended and modified the ERC for "eligible employers" for calendar quarters in 2021. *See* Taxpayer Certainty and Disaster Tax Relief Act of 2020, Pub. L. No. 116-260, 134 Stat. 1182 (Div. EE) (2020) ("Relief Act"), and Section 9651 of the American Rescue Plan Act of 2021, Pub. L. No. 117-2, 135 Stat. 4 (2021), (codified at 26 U.S.C. § 3134). The ERC is only available for 2020 and 2021. 26 U.S.C. § 3134(n).

"Eligible employers" can claim the ERC against applicable employment taxes. CARES Act § 2301(a); 26 U.S.C. § 3134(a). If the amount of the credit exceeds the amount paid in employment taxes for "any calendar quarter, such excess shall be treated as an overpayment that shall be refunded under sections 6402(a) and 6413(b)" of the Internal Revenue Code. CARES Act § 2301(b)(2), (3); 26 U.S.C. § 3134(b)(2), (3).

---

[1] Congress permitted claims for the fourth quarter of 2021 only for recovery startup businesses. 26 U.S.C. §3134(n). Plaintiff does not allege that it is a recovery startup business.

2

For 2020 and the first three quarters of 2021, an "eligible employer" is generally defined as an employer who was "carrying on a trade or business" and was either (1) "fully or partially suspended during the calendar quarter due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease" (CARES Act § 2301(c)(2)(A)(ii)(I)) (the "suspension test") or (2) experienced a significant decline in gross receipts as described in Section 2301(c)(2)(B) of the CARES Act (for 2020) or a decline in gross receipts as defined in Section 2301(c)(2)(A)(ii)(II) of the CARES Act as amended by Section 207(d)(1)(A) of the Relief Act (the "gross receipts test").

Congress authorized the Secretary of the Treasury to issue "such . . . guidance as [is] necessary . . . to prevent the avoidance of the purposes of the limitations" imposed by the ERC. 26 U.S.C. § 3134(m); CARES Act § 2301. Pursuant to Section 2301(1) of the CARES Act, the IRS began providing taxpayers information regarding the ERC on its website. On March 1, 2021, the IRS issued Notice 2021-20 to provide guidance on the statutory requirements of the ERC. IRS Notice 2021-20 at p. 1, available at https://www.irs.gov/pub/irs-drop/n-21-20.pdf. Notice 2021-20 incorporated the existing FAQs the IRS had provided on its website, along with additional information, into more formal guidance.

### B. Amended Complaint Overview: Plaintiff Seeks a Refund and a Nationwide Injunction Prohibiting IRS Action

Plaintiff alleges that it is a contract manufacturer for the medical and automotive industries and that, as a result of compliance with government orders during COVID-19, it experienced decreased machining hours. Amended Complaint, ECF No. 13, ¶¶ 28-29. For these reasons, Plaintiff alleges that it qualified for the ERC under the suspension test for tax periods Q1 2021, and Q2 2021. Amended Complaint, ECF No. 13, ¶ 30. Plaintiff further asserts that it

3

timely filed refund claims for each of these tax periods. Amended Complaint, ECF No. 13, ¶ 31. Plaintiff also alleges that, at the time of filing, the IRS had not issued refunds for its claimed ERCs for Q1 and Q2 in 2021, nor had the IRS issued any notices of audit, examination, disallowance, or deficiency for these tax periods. Nor had the IRS made a claim related to any federal taxes allegedly owed by Plaintiff that would result in offsetting any possible refunds.[2] Amended Complaint, ECF No. 13, ¶¶ 32-34.

Plaintiff's Amended Complaint seeks: in Count 1 a refund of payroll taxes to recover alleged overpayments due to the ERC (ECF No. 13, ¶¶ 35-42); in Count 2, a nationwide injunction preventing the IRS from enforcing or relying on the Notice because it contends the IRS violated the APA's notice-and-comment rulemaking requirement, 5 U.S.C. § 553 (ECF No. 13, ¶¶ 43-55); in Count 3, a nationwide injunction preventing the IRS from enforcing or relying on the Notice because it contends the agency's action in establishing the Notice was arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A) (ECF No. 13, ¶¶ 56-61); and in Count 4, a nationwide injunction preventing the IRS from enforcing or relying on the Notice because it asserts that such notice is inconsistent with Congressional action and was therefore issued beyond the IRS's authority in violation of 5 U.S.C. § 706(2)(A) & (C) (ECF No. 13, ¶¶ 62-68). In each of the three injunctive counts, Plaintiff claims that such relief is not seeking to "enjoin, impede, or restrain the collection of any tax." (ECF No. 13, ¶¶ 55, 61, 68)

---

[2] In amending its complaint, Plaintiff dropped its claims for refunds for quarters 2, 3, and 4 of 2020 because it received refunds for these quarters from the IRS. The United States takes no position at this time on whether the IRS correctly issued the ERCs and resulting refunds for quarters 2, 3, and 4 of 2020. The United States reserves its right to claim the refunds were erroneous but makes no such assertion at this time.

4

## II. LEGAL STANDARD

In this motion, the United States seeks to dismiss Counts 2, 3, and 4 pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

The standard of review applicable to a Rule 12(b)(1) motion to dismiss for lack of jurisdiction turns upon whether the challenge to jurisdiction is facial or factual. *See Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012). A facial challenge questions only the sufficiency of the pleading and requires the district court to accept the allegations in the Amended Complaint as true. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). By contrast, a factual challenge prompts a "factual controversy" about the existence of jurisdiction that requires the court to "weigh the conflicting evidence to arrive at the factual predicate" of whether subject matter jurisdiction exists. *Id*. Regardless of the type of challenge, the burden of proving jurisdiction rests with the plaintiff. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss an Amended Complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the Amended Complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Although in deciding a Rule 12(b)(6) motion a court must accept as true all factual allegations in the Amended Complaint, it does not have to accept as true an Amended Complaint's legal conclusions. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "[C]ourts must consider the Amended Complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the Amended Complaint by reference, and matters of which a court may take

5

judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (statutorily superseded on other grounds).

### III.  ARGUMENT

**A. Plaintiff Lacks Standing to Seek an Injunction or Vacatur, as Sought in Counts 2, 3, and 4, Even if Applied Only to Itself, Because It Does Not Have a Cognizable Injury That Would Be Addressed by an Injunction or Vacatur**

Plaintiff lacks standing to seek injunctive relief or vacatur such as it is seeking in Counts 2, 3, and 4 because Plaintiff cannot demonstrate an actual injury and there is no possibility that the remedy sought could redress Plaintiff's purported injury—the possible denial of the refunds it seeks in Count 1 of employment taxes due to ERC for tax periods Q1 and Q2 in 2021. Plaintiff does not allege that it has any other claims pending before the IRS. Therefore, Plaintiff lacks standing because an injunction forbidding the IRS from applying its own guidance in considering claims for refund would do nothing to help Plaintiff, who has, and will have, no claim for refund before the IRS.

To establish standing, three elements must be present: (1) plaintiff must plead and prove an "injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized … and (b) actual or imminent, not conjectural or hypothetical," (2) "there must be a causal connection between the injury and the conduct complained of," or that is "fairly traceable to the challenged action of the defendant," and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted). For there to be a "case" under Article III, Plaintiff must establish that "the relief sought will likely redress the injury" complained of. *Ass'n of Am. Physicians & Surgeons v. U.S. Food & Drug Admin.*, 13 F.4th 531, 537 (6th Cir. 2021) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)).

Plaintiff does not have a cognizable injury. The determination of whether Plaintiff is eligible for the ERC sought for the periods Q1 and Q2 of 2021 is before this Court. ECF No. 13, ¶¶ 35-42. While Plaintiff claims it has suffered a delay in receiving the refund, ECF No. 13 ¶ 26, any such injury will be fully compensated by the interest Plaintiff will receive if it prevails in this suit. 26 U.S.C. § 6611. Without injury, Plaintiff lacks standing.

Additionally, the injunction or vacatur Plaintiff seeks will in no way address Plaintiff's alleged injury. As noted above, Plaintiff has filed this suit seeking a refund for its claims for periods Q1 and Q2 of 2021. (ECF No. 13, ¶¶ 35-42). Plaintiff does not claim that it has any other pending claims for ERCs before the IRS, and Plaintiff is now time-barred from filing any new claims. 26 U.S.C. § 6511(a). Accordingly, all of its claims for refund are pending before this Court, which will decide Plaintiff's refund claims de novo. *See McGowan v. United States,* 337 F.R.D. 495, 497 (N.D. Ohio 2021) ("[T]he Court decides the case based on a *de novo* review without considering the legal reasoning of the IRS.") (citing cases). Plaintiff does not, and never will, have another ERC claim before the IRS.[3] As a result, it does not matter to Plaintiff what guidance, if any, the IRS will apply in evaluating the ERC claims before it in the future. Thus, an injunction prohibiting the IRS from enforcing or relying on IRS Notice 2021-20 will not address any injury of Plaintiff.

### B. Plaintiff Lacks Standing to Seek a Nationwide Injunction.

Plaintiff's decision to seek a nationwide injunction only highlights its lack of standing. Many taxpayers have ERC claims pending before the IRS. Those taxpayers may or may not have

---

[3] Plaintiff can only claim ERC for the periods still at issue. In the event the United States seeks to recover the refunds issued for the ERCs for quarters 2, 3, and 4 of 2020 (see footnote 1), the United States will bear the burden of proving those were erroneous. That determination may hinge partly on this Court's determinations of the alleged ERCs claimed for quarters 1 and 2 of 2021. But determination of any erroneous refund will be subject to *de novo* review by this Court and without prejudice to any of Plaintiff's claims of the propriety of Notice 2021-20.

7

standing to seek an injunction against the Notice. Plaintiff, however, does not. As discussed above, Plaintiff's requests for refund (the only remaining periods for which it can request a refund based on ERC) are before this Court, not the IRS. Thus, while the injunction Plaintiff seeks might affect millions of taxpayers, such an injunction would not affect itself.

In this respect, the claims for injunction in this case sought in Counts 2, 3, and 4 resemble the claims of the plaintiff that the Sixth Circuit rejected in *Mann Construction, Inc. v. United States*, 86 F.4th 1159 (6th Cir. 2023). That case concerned a challenge to an IRS notice where the plaintiff sought an injunction prohibiting the IRS from enforcing a requirement that it provide information about certain transactions. Although the IRS had already agreed not to apply the challenged notice to the plaintiff in that case, the plaintiff still sought to prevent the IRS from enforcing the notice against anyone else in the country. There, the Sixth Circuit dismissed the claim for injunction, holding that a mere interest in preventing other taxpayers from having a notice enforced against them does not justify a continued suit for injunction. *Mann Construction*, 86 F.4th at 1164.

As in *Mann*, Plaintiff has no personal stake in an APA challenge to the Notice. The IRS will never apply this Notice to Plaintiff's claims—Plaintiff will never have a claim for an ERC before the IRS for which the challenged Notice would apply. In Count 1 of this lawsuit, this Court is reviewing Plaintiff's claim for refund on the basis of a claimed ERC for periods Q1 and Q2 of 2021. Plaintiff does not allege that the ERC is available to it for any other quarter. Plaintiff is *only* seeking an injunction for other possible taxpayers, not for itself. As the Sixth Circuit has already found, "[a]nother taxpayer might, indeed likely would, have a personal stake in that litigation, but not" Plaintiff. *Mann Construction*, 86 F.4th at 1164. Therefore, Plaintiff lacks standing to bring the claims for the nationwide injunction it seeks in Counts 2, 3, and 4.

### C. A Nationwide Injunction Exceeds the Court's Authority

Neither the Court's equitable powers nor the APA allow for a nationwide injunction here, like that sought by Plaintiff in Counts 2, 3, and 4. The APA also does not provide for universal vacatur. As a result, even if Plaintiff had standing to bring Counts 2, 3, and 4, the Court is without the power to grant Plaintiff its requested relief.

#### i. The Requested Injunction Exceeds the Court's Equitable Powers

In a recent decision, the Supreme Court of the United States held that federal courts lack authority to issue "universal injunctions" with the equitable powers granted by the Judiciary Act of 1789. *Trump v. CASA, Inc.,* 606 U.S. ___ (2025). A court's equitable powers are generally limited to the relief "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). The Supreme Court found that no equivalent to "universal injunctions" existed in traditional courts of equity; therefore, no such power exists now. *Trump v. CASA, Inc.,* 606 U.S. ___, slip op. at 6 (2025). The Supreme Court emphasized that federal courts may generally only grant "'complete relief'" *between the parties." Id.* at slip op. 16. (citing *Kinney-Coastal Oil Co. v. Kieffer*, 277 U. S. 488, 507 (1928)). Any relief granted to non-parties is incidental. *Id.* Plaintiff expressly requests a "nationwide injunction" that this Court lacks authority to grant.

The Supreme Court's ruling does not close out all possibility of a nationwide injunction under federal courts' equitable powers, but such relief cannot apply where the request is sought by an individual company as it relates to its own tax relief. *See Trump v. CASA, Inc.,* 606 U.S. ___, slip op. at 16-17 (2025) ("as a matter of law, [an] injunction's protection extends only to the suing plaintiff."). The traditional equitable rule is that injunctions must "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quotation omitted). To the extent that an injunction

9

would provide Plaintiff with any relief at all (and as explained above, it would not), relief would come from an injunction as to only the Plaintiff. How the IRS treats other claims for refund filed by other taxpayers does not affect Plaintiff at all. On the other hand, the burden on the United States would be immense. It would impact how the IRS treats the millions of returns claiming ERCs nationwide and would possibly result in additional litigation related to previously granted and denied claims pursuant to the terms of IRS Notice 2021-20. A nationwide injunction, then, would likely do nothing to benefit Plaintiff while imposing a significant burden on the United States. In other words, an injunction would be more burdensome to the Defendant than necessary to provide complete relief to the Plaintiff. As such, it is outside the scope of the Court's equitable authority.

In *Casa, Inc.*, the Supreme Court, in a footnote, distinguished its decision from "whether the [APA] authorizes federal courts to vacate federal agency action." 606 U.S., slip op. at 11 n.10. However, in the context of taxes, vacatur would violate 26 U.S.C. § 7421 or 28 U.S.C. § 2201. The Anti-Injunction Act, 26 U.S.C. § 7421, bars suits that seek to restrain IRS actions. *Kemlon Prods. and Dev. Co. v. United States,* 638 F.2d 1315, 1320 (5th Cir. 1981), *modified on other grounds,* 646 F.2d 223 (5th Cir. 1981). Similarly, the Declaratory Judgment Act does not permit declaratory judgments in suits "with respect to Federal taxes." 28 U.S.C. § 2201(a); *see also Bob Jones Univ. v. Simon*, 416 U.S. 725, 732 n. 7 (1974) ("The federal tax exception to the Declaratory Judgment Act is at least as broad as the Anti-Injunction Act").

    ii.    **The Requested Injunction Exceeds the Authority in the Administrative Procedure Act**

Section 706 of the APA allows a court to "set aside" agency action. 5 U.S.C. § 706(2)(C). This does not, however, authorize nationwide injunctions or universal vacatur. The language of § 706 "raises a question; it does not answer it." *Arizona v. Biden,* 31 F.4th 469, 484 (6th Cir.

Apr. 12, 2022) (Sutton, C.J., concurring). To begin with, the "set aside" language is part of a waiver of sovereign immunity and must be strictly construed in favor of the United States. *Portsmouth Ambulance, Inc. v. United States*, 756 F.3d 494, 498 (6th Cir. 2014). Even without this presumption, textually, the best reading of "set aside" is merely that the Court should disregard it when ruling on a particular case. *United States v. Texas*, 599 U.S. 670, 696 (2023) (Gorsuch, J., concurring). The terms of a statute must be read "in accord with the ordinary public meaning of its terms at the time of its enactment." *Bostock v. Clayton County, Ga.*, 590 U.S. 644, 654 (2020). When the APA was passed, "conventional wisdom regarded agency rules as 'quasi-legislative' in nature." *United States v. Texas*, 599 U.S. at 696 (Gorsuch, J. concurring). And courts cannot vacate legislation, instead possessing "little more than the negative power to disregard" an improper legislative command. *Id.* (quoting *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923)). In this context, the most sensible reading of "set aside" is that the Court should simply decline to consider the Notice in ruling on the refund claims if it finds that the notice violates the APA. Such a reading is in accord with the ordinary, everyday definition of the phrase. *Id.*

The context of the term in the statute further points towards this reading. Section 706 is titled "scope of review," which indicates that the section concerns the court's decisional process rather than creating a novel remedy. *United States v. Texas*, 599 U.S. at 696 (Gorsuch, J., concurring). The rest of the section similarly concerns the decisional process, further emphasizing that the "set aside" language should not be understood as creating an extremely broad and novel remedy. *Id.* at 697. Section 706 is best read as simply instructing a court to disregard an unlawful agency action in reaching its decision in a suit, not as authorizing a

11

nationwide injunction or universal vacatur. As a result, the relief Plaintiff requests is beyond the Court's authority to give.

### iii. Plaintiff Fails to State a Claim Under the APA Because It Has a Legal Remedy

The United States can be sued only if it waives its sovereign immunity. A waiver of sovereign immunity must be unequivocally expressed, and any ambiguity must be construed strictly in favor of immunity. *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33-34 (1992). "If sovereign immunity has not been waived, the court must dismiss the case for lack of subject matter jurisdiction." *Esquivel v. United States*, 21 F.4th 565, 572–73 (9th Cir. 2021). Section 702 of the APA waives sovereign immunity for suits against the United States when the suit is "seeking relief other than monetary damages." 5 U.S.C. § 702. While it is likely Plaintiff will be able to establish a waiver of sovereign immunity, Plaintiff will not be able to establish that a cause of action exists for Counts Two, Three, and Four, because it is challenging agency action for which another form of proceeding provides an adequate remedy (*i.e.*, a claim for refund).

If a suit invokes the APA's waiver of sovereign immunity and contains a claim alleging an APA cause of action and its review provisions (*i.e.* 5 U.S.C. §§ 704, 706), as Plaintiff did here, the suit is subject to limitations on judicial review. *See* 5 U.S.C. § 704. Specifically, to state a cause of action under the APA, the agency action at issue must be "final" and there must be "no other adequate remedy in a court." *Id.*; *Franklin v. Massachusetts*, 505 U.S. 788, 796-97 (1992); *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 600 (2016). This effects Congress's intent that the APA not duplicate preexisting "special statutory review proceeding[s]," even when there is a violation of procedural requirements. 5 U.S.C. § 703; *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). Most notably here, the APA only applies to decisions when and if there is no adequate remedy in a court. *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 427

12

(6th Cir. 2016); *Gallow Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir. 1998) (quoting 5 U.S.C. § 704).

Here, Plaintiff has an adequate, alternative remedy for the injunctive relief sought in Counts 2, 3, and 4—a refund. *See, e.g.*, *Oom, Inc. v. United States*, 2023 WL 5337150 at *6 (D.N.J. Aug. 18, 2023); *Calen v. United States*, 2021 WL 4356041 at * 9 (E.D.N.Y. Sep. 24, 2021). Conveniently, it brings a request for such an adequate, alternative remedy in Count 1.

Congress has provided specific rules for judicial review of tax determinations; those specific rules control over the more general rules for judicial review embodied in the APA. *See Hinck v. United States*, 550 U.S. 501, 506 (2007); *Bowen*, 487 U.S. at 903. Congress has established a comprehensive system by which taxpayers can seek judicial review of an array of IRS actions and determinations. Claims for refund of overpayment of taxes can only be asserted in a refund suit. *See United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 5-8 (2003). Congress intended for claims for refund related to ERC credits to be treated in the same way as claims for refund of other taxes are treated. Congress explicitly stated that, if the amount that an employer claims in ERC exceeds the amount the employer owes in employment taxes for "any calendar quarter, the excess shall be treated as an overpayment that shall be refunded under sections 6402(a) and 6413(b)." CARES Act § 2301(b)(3)(A); 26 U.S.C. § 3134(b)(3). Additionally, any claim for refund that has been disallowed or not acted on within six months can be adequately addressed by bringing a refund suit. *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 746 (1974).

Here, the only purported injury stems from the fact that the IRS has not paid Plaintiff's claims for refund for the tax periods 2021 where Plaintiff claims its ERC exceeds the amount owed in employment taxes. Congress has provided a clear and complete way to address this

13

injury: a refund suit. Plaintiff seeks this relief by including Count 1 in this Amended Complaint. Through Count 1, this Court will determine whether Plaintiff is entitled to refund. If Plaintiff prevails on its refund claim, it will have obtained all the relief it can hope for from its APA suit and more. At best, success on the last three counts of the Amended Complaint would make it more likely that it will receive a refund. If Plaintiff prevails in its refund suit, it will have actually received that refund. If it does not prevail on its refund claim, then it has no injury to address. Either way, Plaintiff's refund claim will adequately address Plaintiff's claim and will provide it with complete relief.

Therefore, because there is an adequate remedy available, namely Plaintiff's request in Count 1 for a refund, its challenges to how the IRS generally processes ERC claims fall outside of the APA's cause of action. Plaintiff fails to state a claim with respect to Counts Two, Three, and Four, and they should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### IV. CONCLUSION

Plaintiff seeks a nationwide injunction enjoining the IRS from considering any part of its guidance on ERC claims. Such an injunction exceeds the scope of the Court's authority and would impact potentially millions of taxpayers. It would not, however, provide Plaintiff with any relief or affect Plaintiff's claim for refund in any way. As a result, the Court should dismiss Counts 2, 3, and 4 for injunctive relief and vacatur pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

[SIGNATURE ON FOLLOWING PAGE]

Respectfully submitted,

UNITED STATES OF AMERICA,
Defendant

*/s/ Sarah Stoner*
SARAH STONER
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C.  20044
202-514-1170 (v) / 202-514-5238 (f)
Sarah.Stoner@usdoj.gov

15